DAVID NICHOLSON, Respondent, v. CHARLES MER-
STETTER, Defendant; NATIONAL CASH REGISTER
COMPANY, Interpleader, Appellant.

**Kansas City Court of Appeals, January 11, 1897.**

1. **Fraudulent Conveyances**: SALE BACK: POSSESSION. A vendor
has the right to buy back a chattel sold and take it in payment of the
balance of the purchase money, but such action is subject to the same
rules of possession as other sales; and such resale as between the
parties will run from the time of the sale, but as against creditors,
from the time of delivery.

2. **Attachment**: LEVY: AMENDMENT. Where a constable takes up
and is carrying away under an attachment writ a cash register, but
at the suggestion of interested parties leaves it to secure advice as to
the legality of his proceedings from the attachment plaintiff's attor-
ney, he does not thereby abandon his levy; and possession taken
by interested parties during his absence will not defeat his levy.

*Appeal from the Cooper Circuit Court.*—HON. D. W.
SHACKLEFORD, Judge.

AFFIRMED.

*John Cosgrove* and *J. F. Rutherford* for appellant.

(1) The trial court erred in directing the jury to
find for the plaintiff in the attachment. There was
evidence tending to show that Merstetter had sur-
rendered or returned the cash register to the appellant's
attorney and that the same had been accepted in pay-
ment of Merstetter's indebtedness. Whether there
was in fact a delivery of possession to appellant's
attorney raised an issue of fact which should have
been submitted to the jury. It was a question for the
jury to decide. The rule in this class of cases is, "that
a demurrer to the evidence on the claim of an inter-

pleader is not rightfully sustained, unless there is a total and complete failure of evidence.'' There was no such total failure in this case. It was error for the trial court not to submit the case to the jury. *Cracker & Candy Co. v. Ellis*, 45 Mo. App. 585. (2) Merstetter, defendant in attachment, abandoned possession of the property on February 25, 1895. In his own language, ''I left it lay there for the Cash Register Company to take back. I abandoned the possession of the building it was in.'' It made no difference whether the property was removed from Merstetter's possession or whether he was removed from the property. Either was sufficient. He did not attempt to exercise any acts of ownership over it after February 25. This change of possession is sufficient. *Dyer v. Balsley*, 40 Mo. App. 559; Bump on Fraud. Conv. [4 Ed.], sec. 133, pp. 154, 155. Merstetter, the former owner, was divested of the legal and ostensible control of this property. This constituted a sufficient change of possession. Bump on Fraud. Conv. [4 Ed.], sec. 159, p. 179. (3) The first levy by the constable, if his first attempt to seize the property may be termed such, was voluntarily abandoned. He left the property where he found it after the interpleader's attorney informed him that he claimed possession of it for his client. When the constable actually seized the property afterward it was in the office of appellant's attorney and in his possession for appellant, where it was seized by the officer against the protest of appellant's attorney. Then it can not be contended that this levy or seizure was made while the property was in Merstetter's possession, even should it be conceded that it was in his possession while it remained in the saloon building. The statute of this state on the levy of attachments must be strictly followed. *Russell v. Major*, 29 Mo. App. 167; R. S. 1889, sec. 343, part 4;

2 Freeman on Executions [4 Ed.], sec. 262; *Newton v. Strang*, 48 Mo. App. 541. When the levy was actually made interpleader was unquestionably in possession of the property. If interpleader had possession before the levy that is sufficient in this case. *Toney v. Good*, 57 Mo. App. 235; *McIntosh v. Smiley*, 32 Mo. App. 125; 107 Mo. 377.

*W. M. Williams* for respondent.

(1) The levy, made by the constable at the saloon building, was valid, and the seizure and possession of the property by him were sufficient, as against the interpleader. The officer took actual possession of the property. 2 Freeman on Executions [2 Ed.], sec. 260, p. 823; *Russell v. Majors*, 29 Mo. App. 167–172. (2) The conversation between the interpleader's attorney and Merstetter, at the saloon, before Merstetter quit business, did not amount to a retransfer of the property to the interpleader. There was no delivery of the possession of the register at that time. Merstetter continued to use it in his business as before. His notes were not surrendered to him. There was no rescission of the sale, but at most a mere promise to rescind. There was no actual transfer of the possession, nor any cancellation of Merstetter's notes. Either party might have refused to carry out this verbal understanding. No consideration passed. *Chemical Co. v. Nickells*, 2 Mo. App. Rep. 1378.

GILL, J.—The subject-matter of this controversy is a small machine called a "cash register," which was formerly owned by Merstetter, the above named defendant, and on which plaintiff Nicholson caused an attachment to be levied in a suit against Merstetter. In due season the National Cash Register Company interpleaded for the property and on a trial in the cir-

cuit court of the issues between it and the plaintiff, a verdict and judgment in plaintiff's favor was entered in pursuance of a peremptory instruction from the court, and the interpleader appealed.

In determining the propriety of the circuit court's action in sustaining a demurrer to interpleader's case, it will be necessary to notice the evidence with some particularity. The interpleader is, and was at the dates here mentioned, a corporation engaged in the manufacture of these "cash registers," at Dayton, Ohio. In October, 1894, it sold and delivered the machine in question to Merstetter, a saloon keeper at Boonville, at the price of $175 payable in installments of $15, for which he gave his several promissory notes. Up to February 21, 1895, Merstetter had only paid two of these installments and was owing the balance of $115 on the machine. At that time the interpleader sent these notes to Mr. Rutherford, an attorney at Boonville, for collection. Rutherford at once went to Merstetter's saloon, where he found the machine, and demanded payment of the balance due thereon. Merstetter declared his inability to make payment and offered the return of the cash register in satisfaction of the notes. It seems that interpleader's attorney agreed to accept this proposition, but beyond a mere verbal proposal and acceptance, nothing further was done. The attorney did not surrender Merstetter's notes, nor did the latter give up the register, but the machine was allowed to remain in use at the saloon the same as before. Rutherford, the attorney, testified that he was waiting for some agent of the interpleader to come and get the machine. On February 25, and perhaps not more than a day or two after this negotiation betwen Merstetter and interpleader's attorney, the former closed his business, turned the keys of the building over to the agent thereof, and left the country.

FACTS.

The "cash register" was left setting on the saloon counter. Merstetter at the trial testified that he left the register there "for the Cash Register Company to take back," and that he abandoned the building and had no further possession of it. Rutherford also testified that the party in the possession and charge of the building knew that the machine was left there for him (Rutherford).

This situation remained until eight days after the saloon was closed, when plaintiff brought this attachment suit, and a deputy constable, provided with a writ issued by a justice, went with the party who had the keys and possession of the building, was admitted into the saloon building and proceeded to and did levy the attachment on the "cash register." The deputy constable took the machine into his hands and was about carrying the same away when Rutherford, interpleader's attorney, met the deputy at the door, and after some talk as to the propriety of the levy—the attorney claiming the machine for his client, etc.—it was suggested that, before taking the machine away, the deputy constable go down the street and consult with plaintiff's attorney. Thereupon the deputy placed the register on the counter, went and consulted with plaintiff's counsel, but on returning to carry out his levy, the constable found that interpleader's attorney had taken the machine away and placed it in his office. The deputy followed and finding the property concealed in the attorney's back office, seized the same.

Under this state of facts, several questions of law arise. Unquestionably now the interpleader had the legal right to purchase back the machine FRAUDULENT from Merstetter and to pay therefor the conveyances: sale back: pos- unpaid price. But in this it occupied no session. different attitude from that of any ordinary purchaser. To acquire the title to the property

as against Merstetter's existing creditors, it was as much incumbent on the interpleader, through its agent, to execute its contract of purchase and take the machine into its actual custody and control, as would be the case with any other person who had never had any previous dealings in relation thereto.  Viewed then in the light of any other purchaser, it was not only necessary that the parties should agree on terms of sale, but the alleged vendee, in order to withdraw the property from the reach of the vendor's creditors, should show that "actual and continued change of possession of the thing sold" from the vendor to the vendee, as is required by our law of fraudulent conveyances, otherwise the sale will be held void as to the attaching plaintiff. Sec. 5178, R. S. 1889.  There should have been an open, notorious, unequivocal change of possession from the vendor to the vendee to satisfy the demands of this statute, and though the statute says that the sale must be *"accompanied* by delivery in a reasonable time," yet, except as to rights intervening between the sale and delivery, it is held sufficient if possession be taken by the vendee before levy in the attachment suit.  "In such case," it is said, "the sale runs as between the vendor and vendee, from the time of the sale, but as against creditors of and purchasers in good faith from the vendor, from the time of delivery."  *McIntosh v. Smiley*, 32 Mo. App. 125; s. c., 107 Mo. 377.

Obviously, now, the interpleader's pretended purchase was not accompanied or followed by delivery to it of the article—by that actual, unequivocal, open change of possession from the vendor to the vendee, as required by the statute, unless it be when interpleader's attorney took the register from the saloon during the absence of the constable to consult plaintiff's counsel.  Prior to that occurrence there had been no such change of possession as would "apprise the

community or those who were accustomed to deal with the party that the goods had changed hands, and that the title had passed out of the seller into the purchaser." *Huggins Cracker Co. v. Ellis*, 45 Mo. App. 585, and cases there cited; *Harmon v. Morris*, 28 Mo. App. 326.

Coming now to the levy of this attachment, which was on March 5, more than a week after interpleader's alleged purchase of the "cash register," and it would seem that interpleader's case is attended with still less merit. On the undisputed evidence, it is clear that the deputy constable made a valid levy on the machine, when he seized the same at the saloon building. In pursuance of an attachment writ against Merstetter, the officer took the register into his actual possession and was carrying it away when stopped by interpleader's attorney, who suggested that the deputy was in the wrong and that before proceeding further he had better advise with Williams, plaintiff's counsel. The deputy adopted this course and went to consult with said attorney, leaving interpleader's counsel at the building where the machine was. During this brief absence, interpleader's agent seized the property and concealed it in his office. The facts established by undisputed testimony show a valid levy and unquestionably prove that the officer did not intend to abandon the same while he went to consult the lawyer. And it is equally clear that interpleader's attorney, at the time, so understood it. It would be trifling with justice, and offering a premium to what appears "sharp practice" to hold that the constable intended to, or did, in effect abandon the levy which he had already made.

In our opinion, the trial court correctly instructed the jury to find against the interpleader and its judgment will be affirmed. All concur.